IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EDWARD MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 19-0993-MU |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Edward Martin brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for a Period of Disability and Disability Insurance Benefits ("DIB"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 12 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See* Doc. 13. Upon consideration of the administrative record, Martin's briefs, and the Commissioner's brief,[1] it is determined that the

---

[1] The parties elected to waive oral argument. *See* Docs. 26, 28.

Commissioner's decision denying benefits should be reversed and remanded under sentence four of § 405(g) as set forth herein.[2]

## I. PROCEDURAL HISTORY

On or about September 12, 2014, Martin applied for a Period of Disability and DIB, under Title II of the Social Security Act, alleging disability beginning on August 3, 2011. (Tr. 315-18). His application was denied at the initial level of administrative review on November 7, 2014. (Tr. 194-98). On November 13, 2014, Martin requested a hearing by an Administrative Law Judge (ALJ). (Tr. 200-01). After a hearing was held on August 3, 2016 (Tr. 102-20), the ALJ issued an unfavorable decision finding that Martin was not under a disability from the alleged onset date of his disability through his date last insured (DLI), December 31, 2014. (Tr. 168-81). Martin appealed the ALJ's decision to the Appeals Council, which granted the request for review and remanded the case to an ALJ for resolution of an issue concerning his Residual Functional Capacity (RFC) on February 6, 2018. (Tr. 188-90). After a second hearing was held on October 31, 2018 (Tr. 121-55), the ALJ again issued an unfavorable decision finding that Martin was not under a disability from the alleged onset date of his disability through his DLI, December 31, 2014. (Tr. 20-35). Martin appealed the ALJ's decision to the Appeals Council, which denied his request for review on October 10, 2019, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

---

[2] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 12. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

After exhausting his administrative remedies, Martin sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). Both parties filed briefs setting forth their respective positions. (Docs. 20, 21, 25). The parties waived oral argument.

## II.  CLAIMS ON APPEAL

Martin alleges that the ALJ's decision to deny him benefits is in error for the following reasons: 1) the ALJ erred by failing to properly consider Martin's chronic respiratory disorder pursuant to Listing 3.02C(3); 2) new and material evidence warrants remand; and 3) the ALJ's RFC determination was not supported by substantial evidence. (Doc. 20 at p. 1).

## III. BACKGROUND FACTS

Martin was born on April 23, 1967 and was 47 years old at the time he filed his claim for benefits. (Tr. 315). Martin initially alleged disability due to congestive heart failure, chronic obstructive pulmonary disease (COPD), gout, and a back problem. (Tr. 341). Martin graduated from high school in 1986 and has received specialized training in masonry. (Tr. 226). He has worked in the past as a mason, but he has not worked since his alleged onset date. (Tr. 341-42). During the relevant period, he indicated that he mainly sat around his house most of the day, except for dropping his son off at school and picking him up. (Tr. 362). He stated that he could take care of his own personal care and that he could iron, sweep, vacuum, mop, cut the grass with a riding mower, and clean the car. (Tr. 147, 363-64). He also stated that he can drive a car, shop for clothes and things for the house about once per month, attends church twice per month, and has friends over to watch sports about every other Sunday. (Tr. 365-66).

He reported that many of his activities had been hampered by shortness of breath. (Tr. 362-66). Martin alleged that he was unable to work due to his back pain and lung issues. (Tr. 141-45).

## IV. ALJ'S DECISION

After conducting a hearing on this matter, the ALJ made a determination that Martin had not been under a disability during the relevant time period, and thus, was not entitled to benefits. (Tr. 23-41). The ALJ found that Martin met the insured status requirements through December 31, 2014. (Tr. 23). At step one of the five-step sequential evaluation, the ALJ found that Martin had not engaged in substantial gainful activity ("SGA") during the period from August 3, 2011, the alleged onset date, through December 31, 2014, the DLI. (Tr. 25). Therefore, he proceeded to an evaluation of steps two and three. The ALJ found that Martin had severe impairments of chronic thromboembolic disease with associated secondary pulmonary hypertension, chronic systolic heart failure, chronic obstructive pulmonary disease, back disorder, sleep apnea, and gout, but that considering all of his impairments individually and in combination, Martin did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 26-27). After considering the entire record, the ALJ concluded that Martin had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a), except that he could not climb ladders ropes or scaffolds; he could occasionally climb ramps and stairs and occasionally balance, stoop, kneel ,crouch, crawl, and operate foot controls; he could tolerate occasional exposure to extreme heat, cold, fumes, dust, gases, and poor ventilation; and he could not tolerate exposure to unprotected heights or moving mechanical parts. (Tr. 27-33).

After setting forth his RFC, the ALJ determined that Martin was not capable of performing any past relevant work. (Tr. 33). The ALJ found that, considering Martin's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed through the DLI. (Tr. 34-35). Accordingly, the ALJ concluded that Martin was not disabled within the meaning of the Act from the alleged onset date through the DLI. (Tr. 35).

## **V. DISCUSSION**

Eligibility for a Period of Disability and DIB requires that the claimant be disabled. 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

As set forth above, Martin has asserted three grounds in support of his argument that the Commissioner's decision to deny him benefits is in error. However, because the Court concludes herein that the ALJ's cursory and conclusory statement at step three

6

prevents the Court from conducting a meaningful review and, thus, warrants remand, the Court pretermits its discussion of the remaining issues. *See Jenkins v. Colvin*, CA 2:12-00465-N, 2013 WL 3465190, at *2 (S.D. Ala. July 10, 2013).

In *Wilson v. Barnhart,* 284 F.3d 1219 (11th Cir. 2002), the court discussed the listing of impairments:

> The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. § 404.1525(a). Part A of the Listing of Impairments contains medical criteria that apply to adults age 18 and over. *See* 20 C.F.R. § 404.1525(b); *see also* 20 C.F.R. § 404, Subpt. P, App.1. To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *Id.* 20 C.F.R. § 404.1525(a)-(d). **To "equal" a Listing, the medical findings must be 'at least equal in severity and duration of the listing findings.'** *See* 20 C.F.R. § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment. *See id.*

*Id.* at 1224 (emphasis added). A claimant who is not currently engaging in substantial gainful activity and who has a severe impairment which meets or equals a listing is entitled to disability benefits. *Edwards v. Heckler,* 736 F.2d 625, 628 (11th Cir. 1984).

In this case, the ALJ, at step three of the sequential analysis, stated:

> All listings were analyzed. No listing was met or equaled, whether the impairment was analyzed individually or in combination, including the respiratory listing in effect during the adjudication period, cardiovascular listings, and musculoskeletal listings. No examining or treating source reported that the claimant had an impairment that met or medically equaled the criteria of a listing impairment.

(Tr. 27). The ALJ did not state which listings were considered nor did he provide any analysis or reasoning for rejecting all listings. Martin argues that the ALJ's conclusion is

7

erroneous because the medical evidence demonstrates that Martin's severe respiratory impairments equal Listing 3.02C(3). To meet Listing 3.02C(3), in this case, Martin was required to exhibit a chronic respiratory disorder with chronic impairment of gas exchange demonstrated by SpO2 measured by pulse oximetry either at rest, during a 6MWT, or after a 6MWT, less than or equal to 87 percent. *See* 20 C.F.R. § 404, Subpt. P. App. 1 § 3.02C(3). It is undisputed that Martin has chronic respiratory disorders. (Tr. 26). During an ambulatory pulse oximetry test on September 17, 2014, Martin's SpO2 desaturated to 85%. (Tr. 989, 1037). On October 21, 2014, Dr. Berez performed a sleep study on Martin in which the "minimum SpO2 value during sleep was 80%." (Tr. 1022). Based on these findings, Martin contends that the ALJ erred by not finding that he met or equaled Listing 3.02C(3).

The Commissioner contends that Martin failed to prove that his condition met or equaled a listed impairment. (Doc. 21 at pp. 4-5). Specifically, the Commissioner argues that Martin did not meet the specific requirements for pulse oximetry under Listing 3.02C(3). Listing 3.00H2 states that the following requirements must be met for pulse oximetry under 3.02C(3): 1) claimant must be medically stable at the time of the test, 2) claimant's pulse oximetry measurement must be recorded while claimant is breathing room air, 3) claimant's pulse oximetry measurement must be stable, meaning that the range of SpO2 values during any 15-second interval cannot exceed 2 percentage points, and 4) the pulse oximetry report must include the claimant's name, the date of the test, either the altitude or the city and state of the test cite, and a graphical printout showing the claimant's SpO2 value and a concurrent, acceptable pulse wave. 20 C.F.R. § 404, Subpt. P, App. 1, § 3.00H2. The Commissioner asserts that substantial evidence supports the

ALJ's finding that Martin's respiratory impairment did not meet or equal a listing because Martin failed to demonstrate that the pulse oximetry measurement was stable or that the pulse oximetry report included a graphical printout showing the SpO2 value and a concurrent, acceptable pulse wave. (Doc. 21 at p. 6).

Martin counters that while he may not have **met** the specific requirements with regard to his pulse oximetry tests, because there was nothing in the record that indicated that the pulse oximetry was invalid or unstable, he did show evidence of equal medical significance to the requirements of Listing 3.02C(3). He contends that the ALJ erred by failing to evaluate or explain how this evidence did not equal the listing pursuant to his duty to consider medical equivalence. (Doc. 25 at p. 3). *See Davis v. Shalala*, 985 F.2d 528, 533-34 (11th Cir. 1993) (holding that "[i]n applying the regulations on the Listing of Impairments, an ALJ must determine both whether a claimant 'meets' and whether a claimant 'equals' a listed impairment").

In *Himes v. Comm'r of Soc. Sec.,* 585 F. App'x 758, 764-65 (11th Cir. 2014), the court held that an "ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for those decisions, so as to enable a reviewing court to determine whether the ultimate decision is based on substantial evidence." (*citing Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). As noted above, in analyzing step three of the required sequential process, the ALJ here merely stated:

> All listings were analyzed. No listing was met or equaled, whether the impairment was analyzed individually or in combination, including the respiratory listing in effect during the adjudication period, cardiovascular listings, and musculoskeletal listings. No examining or treating source reported that the claimant had an impairment that met or medically equaled the criteria of a listing impairment.

9

(Tr. 27). This is substantially the same brevity of analysis with which a sister court was faced in *Edwards v. Colvin*, No. 5:12cv124/EMT, 2013 WL 4041605, at *7-8 (N.D. Fla. Aug. 8, 2013). Like the ALJ in *Edwards*, the ALJ here did not indicate which respiratory listing or listings he considered in making his step three determination nor did he discuss the particular evidence on which he relied or explain why he reached his conclusion at step three. Instead, he summarily concluded that Martin's impairments did not meet or equal a listing. This bare conclusion prevents meaningful review. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (reversing a decision denying disability benefits because the ALJ "did not discuss the evidence or his reasons for determining that [the claimant] was not disabled at step three," but instead "merely stated a summary conclusion that [the claimant's] impairments did not meet or equal any Listed Impairment"); *see also Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1170 (11th Cir. 2011) (holding that "when the ALJ fails to 'state with at least some measure of clarity the grounds for his decision, [the court] will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion'") (quoting *Owens v. Heckler*, 748 F. 2d 1511, 1516 (11th Cir. 1984)).

While in some cases, the ALJ's analysis of the claimant's RFC might lend support or enable the reviewing court to determine whether a listing was met or equaled without assuming the role of the ALJ as fact finder, this unfortunately, is not such a case. Because Martin's pulse oximetry results were not discussed anywhere in the ALJ's decision, the Court cannot determine whether they were considered or what stead may have been placed on them. Because it is not the role of this Court to make such determinations, the Court hereby finds that this case should be remanded to the

10

Commissioner for a specific determination of whether Martin's impairments meet or medically equal Listing 3.02C(3).

## **CONCLUSION**

Based on the foregoing, the decision of the Commissioner of Social Security denying Plaintiff Edward Martin's claim for benefits is hereby **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings not inconsistent with this decision.

**DONE** and **ORDERED** this **31st** day of **March, 2021**.

/s/ P. Bradley Murray
**P. BRADLEY MURRAY**
**UNITED STATES MAGISTRATE JUDGE**